IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>           Plaintiff,<br><br>v.<br><br><br>JAMES R. CRAWFORD, SR. (01),<br><br>           Defendant. | Case No. 16-40033-01-DDC |

MEMORANDUM AND ORDER
ON MOTION TO TERMINATE SUPERVISED RELEASE

Defendant James R. Crawford, Sr. has asked the court to terminate his term of supervised release early. Doc. 38. Mr. Crawford has completed some 22 months of his three-year term. *Id.* at 1. His motion reports that his "good conduct and efforts . . . demonstrate rehabilitation," and his motion also opines that he is "a great candidate" under the factors in 18 U.S.C. § 3553(a). *Id.* Mr. Crawford's case history divides into three eras. The court outlines them, below, in chronological order.

*First*, there is Mr. Crawford's criminal history. The United States Sentencing Guidelines score his body of work as a Criminal History Category VI—the most severe category recognized by the Guidelines. Doc. 25 at ¶¶ 47–48. Indeed, this grade even may understate the extent of the defendant's long history of lawless behavior. He has amassed 18 criminal history points, *id*. at ¶ 48, five more than the Guidelines' floor for Category VI. *See* United States Sentencing Commission, *Guidelines Manual*, Ch. 5, Pt. A (Sentencing Table). If the *Manual*'s Sentencing Table followed form and continued above Category VI, these 18 points would place Mr. Crawford on the highest rung of a Category VII. But the burden of Mr. Crawford's criminal

history isn't confined to the numbers.  The substance of his convictions also concerns the court.  His record contains multiple convictions for fleeing from, interfering with, and obstructing law enforcement officers.  Doc. 25 at ¶¶ 29 (flight on foot), 36 (flight in stolen car at more than 60 miles per hour, striking traffic sign, and then flight on foot), 44 (resisted traffic stop when defendant "accelerated over a curb, drove over grass, then back onto street" and struck a utility pole, then continuing his flight on foot from United States Deputy Marshal), & 45.  He also has earned multiple convictions for burglary, *id*. at ¶¶ 30, 32 & 43.

*Next*, there is Mr. Crawford's performance during the earliest stage of his current term of supervised release (TSR).  Mr. Crawford's TSR began on July 8, 2020.  Doc. 34 at 1.  About eight months into his supervision, on March 15, 2021, the assigned United States Probation Officer paid a visit to Mr. Crawford's home.  This "officer located a device [Mr. Crawford] admitted he used to smoke methamphetamine."  *Id*.  Mr. Crawford then consented to a search of his home and the officer discovered several items of drug paraphernalia.  They included a "small amount of marijuana, individual small baggies . . . , and small roaches dipped in methamphetamine."  *Id*.  More troubling yet, the officer located "urine defeating devices," which presents some doubt about the reliability of Mr. Crawford's clean UAs.  *Id*.

*Last*, there is the way Mr. Crawford (and the USPO) responded to this concerning discovery in March 2021.  The USPO elected not to seek revocation of his TSR.  Instead, the probation office asked defendant to agree to modify his conditions to add a halfway house condition.  Doc. 34.  Mr. Crawford consented and he lived in an RRC for about 90 days.  About one month into his stay at the halfway house, he sought help with "anxiety and depression."  Doc. 36 at 1.  USPO supported this effort by requesting a medication condition, which the court approved.  In sum, since the discovery in March 2021, Mr. Crawford has performed well,

conforming, it appears to, all his conditions.  This progress is not minimal and the court commends defendant for his lawful behavior during this time.

In general terms, the statute conferring authority to terminate a TSR early directs the court to consider almost all the statutory sentencing factors in 18 U.S.C. § 3553(a).  *See* 18 U.S.C. § 3583(e) (specifying factors); *United States v. Begay*, 631 F.3d 1168, 1172 (10th Cir. 2011) (explaining a court may terminate a TSR "only if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice" (citation and internal quotation marks omitted)).

After weighing the positive and negative facts on the scale mandated by the controlling statute, the court concludes, on balance, that it's not yet in the interests of justice to terminate defendant's TSR.  Two factors provide most of the grist for the court's conclusion:  Mr. Crawford's history and characteristics (§ 3553(a)(1)); and the need to protect the public from possible future crimes (§ 3553(a)(2)(C)).  Certainly, the court is cheered by the progress reported in Mr. Crawford's motion.  One hopes it will continue.  But the timeline presented by his criminal history establishes that, Mr. Crawford, earlier in his life, achieved substantial periods of lawful conduct before returning again to unlawful conduct.  For instance, Mr. Crawford wasn't convicted of any crimes between July 2012 and March 2017.  Doc. 25 at ¶¶ 44–45.  And yet he returned to criminal behavior in late 2015 and 2016.  *Id*. at ¶¶ 45–46.  His relapse included the offense conduct sponsoring the convictions that produced his current sentence—passing out in the driver's seat of someone else's car while possessing a handgun.

In sum, while the court commends Mr. Crawford for taking his life in a different direction recently, it does not negate the concerns presented by Mr. Crawford's long and

persistent criminal history.  Unpersuaded that terminating the TSR early is warranted by "the interest of justice," *Begay*, 631 F.3d at 1172, the court respectfully denies his motion.

**THEREFORE**, the court denies defendant's Motion to Terminate Remaining Term of Supervised Release (Doc. 38).

**IT IS SO ORDERED.**

**Dated this 18th day of May, 2022, at Kansas City, Kansas.**

s/ Daniel D. Crabtree
**Daniel D. Crabtree**
**United States District Judge**
